Our next case is N. Ray McFadden. Mr. Smolkin. Thank you, Your Honor. Nice to see you, sir. Nice to see you. Good morning. May it please the Court. Anatoly Smolkin on behalf of John McFadden. Almost eight years after his conviction, Mr. McFadden discovered evidence suggesting that his attorney failed to communicate a ten-year plea offer to him. Had Mr. McFadden been aware of this offer, he would have accepted it, and he would have not been found guilty of nine separate offenses of conviction. What was the offer? Ten years, you say? Ten years to plead guilty to two counts. Ten years of what? Ten years active incarceration, Your Honor. He probably would have accepted that 13 years if he knew he was going to get 88 years, wouldn't he? He wouldn't even take that. I mean, he started out, he offered him 50-something. He wouldn't take that. Went to 23, then down to 13. He wouldn't take that. And then all of a sudden, this comes up. And tell me, how are you going to get this relief? Because you've got those two prongs to deal with. You're not fitting that constitutional deal there, so you've got to fit under that second one. Isn't that thing limited to actual innocence? Well, Your Honor, I believe your question has two answers. First, I'll address the point about whether he truly would have accepted a ten-year offer had it been. No, go to the issue of this case, which is the one I just dealt with. I don't care about whether he would have accepted it or not. I just want to know that part about it right there. We don't even get there if, as a matter of law, we don't even reach this kind of question if that's limited. That's correct. If this Court decides the test is limited to factual innocence, then Your Honor is right that the Court doesn't reach the question. Isn't that the state of the law? No, Your Honor. I think that courts have interpreted the test in terms of actual innocence. They've described it in those terms. And I think that's because the facts of the cases that were presented to them involved claims of innocence. Has anyone interpreted it in the manner that you seek to advance it? No, Your Honor. There's not a single published opinion that we're aware of. Everybody has gone in the other way on this case. Well, I don't think anyone has. You're just saying it never has been presented. Is you saying that or what? That's right. This issue has never been presented, the issue we present today. Sometimes you don't present an issue because you don't have a basis to present it. That's true, Your Honor. We think we do have a basis, though, and I think the basis is the language of the statute. The language of the statute is the guiding principle here, and it's whether the facts underlying the claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the applicant guilty of the underlying offense. And that's crucial here because the new evidence that we've presented. If he had accepted this agreement, then you wouldn't have gotten to a fact find and finding guilt is what you're saying. With regard to nine of the 11 offenses for which he was convicted. He wouldn't have been found innocent of the nine accounts. No, that's true, Your Honor. He would have been dismissed. Correct. But the statutory test doesn't speak in terms of innocence. It speaks in terms of a fact finder. But the Shalhoub, if that's the right way to pronounce it, gateway thing has to be innocence. Actual innocence. Right. I believe that was the standard prior to the enactment of the statute. That under the abuse of writ doctrine, that was the standard. That has been replaced by the statute. And the statute speaks in terms of the inability to find guilt. And here, where the question is entirely removed from fact finder's consideration as to nine out of the 11 offenses, how could that fact finder. If they bargain away nine counts, that makes him innocent of nine counts. And that really doesn't do it. It's a plea bargain, isn't it? You just settle on something and go on. Well, Your Honor, that's not exactly. That's what happens in about nine percent of these cases. That's true, but that's not exactly our position. Our position isn't that by accepting, by pleading guilty to two counts, he would have been found innocent. You wrote up this plea agreement that you say it's really not a plea agreement. It's not signed by anybody except the defense lawyer. It appears to be a draft plea agreement. You don't know who wrote it up. That's right. You have no idea who wrote it. Correct. But your theory is that the prosecutor wrote it. That's right. But you don't have any proof of that at all. In the defendant's file, the defense lawyer could have written it. Well, Your Honor, that actually raises a point for why this— The defense lawyer—I mean, you're going to guess about it. The defense lawyer could have written it up and signed it and presented it to your client, Mr. McFadden, and he said, no, I ain't going to do that, and he put it in the file. Your Honor, those might well— That would be—and the prosecutor never saw it. You don't have any evidence that the prosecutor wrote it. You don't have any evidence that the prosecutor saw it. So you don't have any evidence that the prosecutor ever offered what's in that—what you call the new plea agreement. Well, Your Honor— Is that not correct? That is not exactly correct. Okay. The evidence that we have as a prima facie matter, which is the standard that this court is to adopt under this motion, the evidence is the draft plea agreement itself. That plea agreement permits an inference that a corresponding 10-year offer was made. Whether the prosecutor drafted it or the defense lawyer, it was arguably drafted because it went along with the 10-year plea. How do we—do you think we read that in the light most favorable to your client? Well, Your Honor, this court— Why would we do that? He has the burden, doesn't he, on this motion? He does. He has the burden to prove a prima facie—to make a prima facie showing. And it must be by clear and convincing evidence. I'm still hung up on this actual innocence. We're not even going to get there if we don't get off that. I know you want to get to this other question, but the Supreme Court has made it clear. You've got to have facts that establishes the innocence by clear and convincing evidence, not keeps the court from finding your innocence, not saying you're not guilty or whatever, not just reaching, not dismissing it, but establishes the fact that you are actually innocent. It's a Supreme Court case. That's right, Your Honor. The Supreme Court has spoken in those terms. How do you get around that? Tell me where the facts are that establish innocence. Your Honor, it's not our contention that the newly discovered fact establishes factual innocence. Then if it's not that, then you cannot satisfy that Supreme Court case to get in that problem. And our position is that we can satisfy the statutory standard. We believe the Supreme Court case wasn't presented with— You think the Supreme Court was wrong? I think the Supreme Court didn't— Or didn't consider, because that's what it said. It says it right there. Absolutely, Your Honor. I think the Supreme Court didn't consider this circumstance when it— Then you know where you're going to have to go to get them to correct what they said? It can't be us. Well, Your Honor, I think that— You must be just using us as a bypass to get this to them so that they can fix this, because we can't fix that. Well, Your Honor, I don't think that a decision in the way we're—a decision that we're seeking, I don't think that would actually be inconsistent with the Supreme Court case law, because if we just apply the words of the statute, and the statute has to govern. And it's our view that simply because the court has described this in the actual innocence, in those terms, it doesn't mean that the— The Supreme Court makes it clear, and I want to beat it deaf here. It says you're going to go with this constitutional right. If not, then only if, only if, you then bring facts that establishes the innocence. And you don't have any facts that establish innocence here. I understand your position on this. I mean, first of all, even establishing the inference side seems to me to be a bit speculative to even get there. But that's beside the point. Assuming it is there, you have newly discovered evidence of a potential plea deal that you bring at this stage of the proceeding, and you have to come in under this statute in that second prong of the Supreme Court. It's limited. What do we do? It's our—our argument is and our position is that under the language of the statute, this set of circumstances fits squarely within that standard. And I could be agreeable to you all day long, but if the Supreme Court says only if, and that's an opinion, only if you establish, establish innocence. Well, I don't think the Supreme Court has answered this question. And that's why we're in a unique set of circumstances. They precluded it by using only if. It may not have—yeah, you're right. It may not have answered it, but it uses only if language. That's right. I think that the distinction that the statute tries to create is a distinction between the ability to challenge a sentence versus the ability to challenge a conviction. And that is what this Court has spoken in terms of. It's that a prefiling authorization motion can only be granted where it impugns the reliability of a conviction itself and does not merely challenge a sentence. That's uniform. Then you go to the statute. The statute then even limits it there because it says no reasonable fact finder would have found. That's right, Your Honor. And you're saying had this plea agreement, no reasonable fact finder could have found this? That's right. If under the plea agreement had Mr. McFadden pled guilty to only two counts, the question of guilt would have been entirely removed from the fact finder's consideration. It would have been impossible. That's a whole different thing. You're saying this is no reasonable fact finder. I guess it assumes the matter is before this fact finder. If it's removed from there, of course no reasonable fact finder because it's not an issue before it. But this assumes that you've got to have facts that say no reasonable fact finder would have found, meaning it's before the fact finder. I understand your point, Your Honor, and I think that our interpretation is a little bit different. It's that under this specific statute. It has to be because if you follow that, you don't win. It has to be. But I don't know how you get around it. Well, the way we get around it is that where the question is removed from the fact finder's consideration entirely, and this is a rhetorical question, but how could that fact finder find guilt? And the answer is the fact finder could not, that there is no conceivable way that where the question of guilt is removed from the fact finder's consideration, that that fact finder can find the applicant guilty of the underlying offense. Why wouldn't we look at the facts that are revealed on this record and assess it ourselves as whether it's a reasonable fact finder down the road that would find him guilty of those other nine offenses? Well, I think that this is a unique circumstance where you don't get that far because this would have removed the question from the fact finder. But you don't even get to any of that unless you got that, unless that's really 10 years and it was undisclosed and all that. And it doesn't say a 10-year sentence. It says a 10-years active incarceration. What do you have to, what kind of a sentence do you have to get in Virginia under Virginia law? This is Virginia, right? That's right. To serve 10 years in the penitentiary. What's the sentence have to be to, if I read active incarceration to mean you're going to be behind bars for 10 years, how much of a sentence do you get to be behind bars for 10 years? You have to get at least 12 or 13 years, don't you, because you have to have something on the back end like supervised release or something? Well, I'm not sure, Your Honor. I think that the statute, I'm sorry, the plea agreement refers to the total. The plea agreement says active incarceration, what you call the plea agreement, the discovered evidence, sentencing with a cap on active incarceration at 10 years. That's right. That's what it says. It doesn't say a sentence of 10 years. It does not. You say it says sentence. It does not say sentence. It says active incarceration for 10 years. Your Honor, I agree that. So how long do you have to be sentenced? What's the sentence have to be, 15 years to serve 10? I'm just trying to find out. You're the lawyer. Your Honor, I'm not sure the specific. Maybe the attorney general can tell us. I'm sure she can, but you don't know. I don't know the answer to that specific question, Your Honor. But under Virginia rule, the judge, when presented with a plea agreement like this, can either reject it, accept it, or defer consideration. And the judge actually talked to it. In here, there's talk about 15 years being turned down, and when they had the plea transcript talks about 15 years was turned down. The plea transcript talks about 13 years being turned down. The judge says 13 years, and your client said 13 years. That's right. I wonder if that's actually referring to a 10-year active incarceration. Well, Your Honor, that raises a point that I think supports our position, which is we don't know the facts underlying the claim. Which would mean that your client knew about this, and he turned it down. If that is what the factual investigation and determination reveals. I don't know. You don't know what kind of sentence you have to get to do 10 years. That's right. To do 10 years of active incarceration. That's right. I'm not sure if there's a distinction between a sentence of active incarceration or if the 10 years would have been the sentence. My reading is that the 10 years would have been. My guess is that there is something, because otherwise a plea agreement would say a sentence of 10 years. They know how to write these things. Most of the ones we see, at least in the federal, talk about sentences of X number of years. Well, Your Honor, I think it's an issue. It just doesn't say sentence. It just jumped out the page at me. It says active incarceration, which I read to mean he's going to be in the hoose cow for at least 10 years, and then somewhere else. It says a cap. On the street. Well, Your Honor, it says a cap on active incarceration, which does, I think, support the notion that he could not serve more than 10 years. But in any event, I don't think this specific factual question can be or should be resolved by this panel. I think that it raises a. All you're trying to do is get a chance to litigate it. That's right. We'd like a second or successive habeas petition where we raise this claim where the district judge is permitted to order an evidentiary hearing if he or she decides one is necessary and to call witnesses and to cross-examine the witnesses and find out what all of this means. But the facts that have been presented thus far show a sufficient probability of merit, which is the standard that this court has adopted to warrant a fuller exploration by the district court. And that's the basis for this motion. That's the relief we seek. These factual questions are important, certainly. And I don't mean to discount them. But I think that the correct place where they are to be litigated is the federal district court if our motion for pre-filing authorization is granted. What did Virginia state court about this claim that you're making, this uncommunicated plea? So a few weeks before Mr. McFadden filed his pro se pre-filing authorization motion in this court, he filed essentially a parallel proceeding in state court. And what that court determined was that it was untimely, that it did not, it was not filed within the two years under Virginia law, under the Virginia statute of limitations. They also went on to opine that the claim had no merit. But it's our view that Mr. McFadden, first of all, never even had to file that state proceeding because he had no remedy left. So the Virginia state court has found this offer has no merit. Is it of no consequence to us that a state court has specifically made that claim? That's correct, Your Honor. It is of no consequence to this court. And the reason for that. Why wouldn't it be entitled to epidephrics? Well, our view is it's not a factual finding. It was on a motion to dismiss. It wasn't after evidence was taken. And I think that it was purely dicta. It was not necessary to the decision. The court rendered its decision on limitations grounds. And the court then refers to an affidavit. Is that Virginia decision in this record? It is, Your Honor. And it is located at Movens Appendix 366. And what that court found was principally that it was untimely filed. And the court then refers to an affidavit, which we don't. That's the circuit court? For the city of Norfolk, Your Honor. Was there an appeal lodged? There is an appeal lodged to the Supreme Court of Virginia, and it's pending. Mr. McFadden moved pro se on that. But the point we're making, and I think it's the important point, is that the basis for the decision, the dismissal, was that it was untimely. And our view is he didn't even need to file that petition in state court because he does not have any state remedies available, which was only confirmed by the state court's decision that it was untimely. Unless there are any other questions, I believe I've reserved a few minutes for rebuttal. Thank you very much. Thank you. Ms. Bourne. Good morning. May it please the court, my name is Rosemary Bourne. I would argue, first of all, that he asked you to apply the language in 2244B2B2 to something other than actual innocence. And I would urge the court, although it may not ultimately make a difference in this case with what happens if you were to refer this or were to grant preauthorization, I would urge the court not to do that for several reasons. First of all, he characterized this as an unusual case. But we know from Supreme Court opinions in Lafler and Fry that these ineffective assistance of counsel claims with regard to failure to present plea bargains are actually just like any other ineffective assistance of counsel claim. And so if you were to do this in this case, interpret the language in this case this way, it would also apply to a Fifth Amendment violation, which was recently discovered, for example, where if the client or the applicant recently found out about a Fifth Amendment violation and then came forward, no reasonable fact finder may have found him guilty because perhaps the statement would have been kept out. But it's not evidence of actual innocence. So in essence, he's asking you to crack open the entire universe of ineffective assistance of counsel claims and to look as to what would have kept evidence away from a fact finder. And that is why the United States Supreme Court, although... It would apply to any newly discovered evidence that the consequence would be that certain claims would be dismissed. That's correct. If you accept it. Yes, Your Honor. And certainly with any number of ineffective assistance of counsel claims that if you interpret it as keeping the... If you kept the evidence away, and I just go back to my example for the Fifth Amendment, if, in fact, a statement were kept out, and that was recently discovered, some evidence was recently discovered that counsel didn't do something he should have done with regard to a statement, then the problem is the fact finder may have not ultimately heard about a confession that was the basis of the conviction. And then, therefore, they would not have found the defendant guilty. Well, that means that we have an endless universe of successive petitions, potentially, in these cases. And that is not what the United States Supreme Court met in Calderon v. Thompson when it said, only if the prisoner shows, among other things, that the facts underlying the claim establish his innocence by clear and convincing evidence. And the reason for this is because of the finality of judgments, and the state is entitled to, and it is of import, that the state be able to rely on its finality of judgments. And we have carved out an exception to that. You know, the states always rail upon, I must say, it's almost agnosium of finality. You know, the framers of our Constitution, they didn't talk about finality. They talked about a right to counsel, due process. And all of a sudden now, by judicial decree, almost, we've elevated finality to something greater than the framers ever even thought that that should be. I mean, that's your hypothetical. You have a person who has a capital offense, and their lawyer was presented an ordeal that, listen, if you plead, your client pleads to five years in prison, we'll drop this thing. Counsel never tells him. And he's convicted and sentenced to death. So under your reasoning, for the interest of finality, there will be no remedy. In other words, he'll be sitting there waiting for the electric chair or lethal injection or whatever the cocktail of choice is for the state that's going to kill him, and say, well, you know, okay, your counsel had a five-year deal. They didn't tell you. Finality. The states needs finality. Wouldn't that be the same result under my hypothetical that you're urging the court, the lawyers now? Yes. There is an escape hatch, however, if the applicant can show he's actually innocent. There is an escape hatch. He has not demonstrated. An escape hatch? He was entitled to counsel under the Sixth Amendment. We don't say people, if you don't have a lawyer at all, well, you would have been found guilty, whether you had a lawyer or not. We said no. There's something about that. It's so intrinsic, so important to the core of our values as a rule of law, a country under the rule of law and rights, that we don't do it. You agree with that? We don't do that, do we? We say, you know what, you're so aware of being guilty, you didn't have to have a lawyer. You don't have a trial, don't you, if you didn't have counsel? Of course, Your Honor. Why? Why? Why? Because that is also of paramount consideration. But what the Supreme Court has said, and even in response to cases involving the actual innocence exception, has also talked about, the Supreme Court has talked about the finality of judgments and the state's interest in that. So, although I agree with you. It's a court just like ours, but I think we're under the law. We're supposed to, we swore an oath to the Constitution, not to the government, but to the Constitution only. And we would defend and protect the Constitution of the United States, not the government. So, even if the Supreme Court is saying it, the question is, though, our framers never elevated finality above the whole idea of justice in a situation. So, you're saying, okay, your lawyer blew it, didn't tell you about five years. Well, I'm not saying that, Your Honor. I know you're not, but that's the same result, isn't it? Well, it is the same result. Well, I practiced law for a long time, and I did criminal defense work. I would think that's just the height of abdicating a role in the Sixth Amendment. I'm not saying this counsel here, but I'm talking about this is still in the hypothetical. I'm not saying these facts there. But counsel is correct. He agreed. He doesn't have to show that he's going to win, but a prima facie case. And what he's saying is that this is enough evidence here for the district court to go back and look at it. If there's nothing there, then so be it. But that's his argument. Go ahead. Well, I would certainly say that he cannot get outside of how the Supreme Court has interpreted the language in 2244B2B2. But besides that, because they have certainly explained what they meant by that language, under the AEDPA, what that means. But besides that, even if we get into the factual situation in this case, he has not met even a prima facie burden in this case, because we have to look at the statute again under the prima facie burden. He has not shown that by clear and convincing evidence that there was a constitutional violation in this case. There is one document that he has proffered which is not a plea offer. What do you make of it? It's a draft. It's a piece of paper. It's a piece of paper. It's signed only by his counsel. It says plea agreement on the top of it. It's signed by one of the lawyers. It's signed by his lawyer. Right. That's one of the lawyers in the case. Yes, but in order to show a Lafler-Frey violation, he has to show that there was an offer made by the prosecution. And in that document. What do you know about this plea agreement? This document. It's called a document. What do you know about it? You can help as well. The only thing I know is that, and what I think we have to take as true for the purposes of this hearing, is that it was found in his attorney's file. And that's the only thing we know about it. Other than that, it speaks for itself. And what it does not say is that it's an offer. Do you know whether the Commonwealth knew anything about it? I would say that the evidence forecloses that possibility when we look at what was said in the sentencing hearing. Where did the 13 years come from? Well, and I think that this is very, I understand what your Honor was saying about the extra suspended time that would have, I don't know what the law is in Virginia. I know what it is in some other. But in addition to that, I think that there's a factual. But it doesn't say a 10-year sentence. That was my point. It doesn't say 10-year sentence. No, it doesn't. Does that mean anything? Yes, it does. Okay, what's it mean? Because an active sentence means a sentence that you actually serve insofar as incarceration. To serve actively 10 years, what's your sentence need to be? Well, for robbery, it could be up to life. No, I know. You're not asking what Judge, I'm not answering what Judge King is asking you. Because he's, Judge King I believe is saying that, I have a different interpretation, but Judge King is saying that how much time would you have to get in terms of numbers of a sentence to actually physically be incarcerated for 10 years? I understand. You serve 80% of your time, I believe, in Virginia. There you go. That's exactly right. I didn't understand your question, and I apologize. Eighty percent. But I would. So it would be close to 13 years. Yes, Your Honor. But in addition to that, there's another problem. That's what the judge and this defendant talked about at the plea hearing. They talked about 13 years. So I was making that, I guess I was. Absolutely. But maybe there's something to it. Absolutely. But there's another issue. There's even another issue, which is that there was an, that whole discussion involved an unrelated probation violation, which was not part of this group of offenses. And what he would have you believe is that he wouldn't have taken a 13-year sentence. But he turned down the 13. Right. He turned down everything. According to that, he turned down 15, he turned down 13, and he wanted a trial. Exactly. Exactly. And that's exactly what the evidence shows. And he ended up with 88, which is a bad decision. And he can't, he can't, it is a bad decision, but it's one that he made. I understand, but he turned down 15 and 13 on this record. Well, but I would. And went to trial, and this is what he ended up with. And then he found this thing in his lawyer's file. But I would just make this point to you, is that there is an additional sentence for a probation violation, which very well could have accounted for that three years. Meaning that if we have a 10-year offer for the things that are on the table, and that offer, even if it was an offer, which I would argue it's not, even if it was, under his best interpretation of it, it does not address at all the probation violation that was discussed at that sentencing hearing, which would have been separately. Three years? Yes. It was for a felony, I believe for distribution of narcotics. I could be wrong, but my recollection is that that's what it was for. And so what he would have, you believe, is that he would not have accepted a 13-year sentence, which included that unrelated probation violation for a felony, but he would have accepted a 10-year sentence, which then could have given him a whole lot more for that probation violation because it wasn't. He said at the plea hearing he wouldn't take 13 years. That's right. That came from his own lips. And he said, and I would say that under Henry Boucher's, and I hope I'm pronouncing that correctly, but the court, which was sided by both parties in this case, the court said that if the appellate court can see that any relief would be futile by granting the ability to review this second and subsequent petition, it would not have to grant it. And that's what we have here because there is no way, based on this record, that he, and he's already filed his state habeas petition with the same records that he filed in front of this court, that he is going to be able to demonstrate that he would have accepted that, A, that this was a plea offer, and that, B, he would have accepted it. We don't know that, counsel. I mean, obviously, in fairness to you, you're an advocate for the Commonwealth, and I expect you to say that, but that's not the case. For example, even as, for example, with my very good friend and dear colleague, the lead judge, King, I have a different interpretation of what active means. I think what it means that, you know, when you say active sentence, active sentence or whatever, you don't say something like active time. It's distinguished between a sentence where you get, they don't want to have someone hit 20-year sentence, but you only get five years to serve. And I think they weren't so much concerned with their, how much time you actually do sitting in the cell, but as to what the active sentence is for incarceration, no matter whether that time. Because some people do 20 for 20, 30 for 30, 10 for 30, you know what I'm talking about. And that 15% can vary based on your prison conduct and all kind of variables. But I think they're talking about sentence for incarceration. And what he's saying is that I was offered a sentence of incarceration of 10 years, and my counsel, at this point, there's at least a smoking gun there that says, signed by him, that that was an offer. That's to be proven or let a district court to say. And all those things you talked about, fair enough. At the hearing, you would say, ah, we got a probation, and therefore you can't show there's been a difference. But that's what that hearing is for. But at this point, it's not for us. It's just whether it's a prima facie case. But you don't get the rebuttal on the merits completely here, do you? Well, I would disagree that the only issue is whether it's a prima facie case was made on the merits. Because, in addition, he still has to show he falls under the statute, which I would argue that this is not actual innocence and it does not fall under the statute. So, no, I would not agree with that. But, in addition, I would just like to make one other point, and I hope I'm answering. I'm not sure I'm answering your question, but please, I'm sure you will tell me if I am not. Which is that he has said that the court, the lower court in this case, did not make a factual finding. And that's inaccurate. There were alternative findings by the circuit court. There was a finding that this was time barred, but there was also a finding it was without merit. You're talking about the state court. Yes, the state. That's on appeal. Yes. Well, why would we get into this? Well, it's not exhausted. That's exactly right. It's still going to the state court. That's exactly right. He can get what he wants over there. That's exactly right. He can. Yes, potentially. The Supreme Court of Virginia, in fact, could say. Does that appeal go directly to the Supreme Court of Virginia or go to an intermediate court? No, directly to the Supreme Court of Virginia. So he right now is litigating in the Supreme Court of Virginia, just upstream. Yes. And that's why I would argue that this is premature, because the Supreme Court. Why didn't you move to hold this thing in abeyance? Well, I did argue it was premature in my brief, but I didn't. I was actually ordered by this court to file a response, and that's what I did. Isn't that the better result here, that it should be held in abeyance to see what the state says? Well, I certainly did argue that it was premature. Well, now we're here now. Isn't that better? You can make an oral motion. We'll let you make one. What's Jefferson saying? We have a right to be smarter today than I was yesterday. Well, I mean, I understand what you're saying, and maybe that is, but the issue here is that there's no way he could prevail because of the legal stature of this case. Well, he could get it reversed. The Supreme Court of Virginia could reverse. That's true. The circuit court. Well, they could find that. They could give him a relief. They could. Or they could order a hearing. They could send it right. Send it back to him and tell him to give him a hearing. That's absolutely true. And the federal government could stay out of it. Federal courts could. We've got a bunch of other cases, too. But my point is that, Your Honor, there is no way that he could satisfy the statute in this case, unless we want to come up here again and do this in a few months. Because he would need the statute if Virginia gave him the remedy that he's seeking, right? Right? If they gave him the remedy that he's seeking, if they granted him relief, that's right. He wouldn't need to come to this court. That's the whole point there, the federalism. We wait. Normally, the state is always touting federalism, right? That is, we put it in abeyance to see what Virginia, my beloved Commonwealth home state, will do, correct? Yes, Your Honor. Are you handling the case in the Supreme Court of Virginia? I am. Well, we're in good shape. Yeah. We've got the same lawyer over there. We'll let you handle it. I'm heavily represented by counsel. Yeah. Anyway, unless the court has further questions for me. If we granted the relief that you seek, that is, that this does not meet the statute on the cauldron, does that preclude him from going to state court and asking for the state court to ask for an independent remedy? No, because the relief that he's seeking here is for a successive petition. So that's a different – We just had this wonderful discussion. I'm trying to see what is the connection. What he is seeking – I want to inform the others, is what I'm asking. If we act here, does that keep him from going to state court? No. No, Your Honor. No, it does not. So what does holding an abeyance do? Nothing. Well, counsel, you'll be, I'm sure – Something must do something. You just had this wonderful discussion over there. Counsel, you'll be running down to the steps of the Supreme Court with the hot-off-the-press, and we ruled against it. They've already made this rule. No, because the only – No, they're moved to dismiss the appeal. The only issue here is whether he's entitled to a second or subsequent petition in this – And then there's an ineffective assistance claim to be litigated. Right. Is he claiming ineffective assistance over there? Yes, he is. Well, it's the same thing. This is just a procedural step under AEDPA. Yes. I mean, the Supreme Court of Virginia could give him the Sixth Amendment relief he wants. That's correct. Go right on down the road. But that brings me back to my question. If what we do here is procedural, it doesn't establish the merits. Whether you run down there with it or you are running down is assuring we didn't take it. The merits are still there. How does one inform the other is what I'm trying to understand. Well, I'm not sure that it does. I mean, I – So what – I mean, what does abeyance, holding abeyance, what would that do? It still – It would just put it down for – You're barred here. You still won't get here. That's right. And it would just hold it off for another day. Well, and what would happen at that day? Well, I think we would still be in the same place, which is that he's not going to be able to establish – So what if they say it? How different does the argument happen here? He would still have to file a motion for a successive petition, and he would not be able to get it because he would not be able to establish actual innocence. What's confusing me about this argument? I'm trying to understand it. But you've gone both ways on it now. You realize you've gone this side, and now you're back over here. So I'm not following it. Well, I think that they're apples and oranges. I think that they're two different things. One thing is whether the state court is exhausting its remedies, which goes to the merits. And the second thing is whether or not this court can entertain a second or subsequent petition, which is a completely different thing. But if you go over there, if we hold it in advance, or if we go ahead and deny it, and then he loses in the state court and then wants to litigate here, then you're going to say, well, you already had – he's already had a bite at the second try. You'd say this is race judicata. Well, I'm certainly going to be making the same argument that I'm making today. But you'd say we've already ruled on the very issue. Whether he should have a second or subsequent petition, yes. On this point, on this plea agreement thing, because it's already – we've resolved it today. If you decided on the merits, yes. So from his standpoint, he'd be better off with an advance to leave it pending. But, again, it – At least that bars you from pleading race judicata next year. Well, it does that, but it ties up the court with having to decide this very same issue again, which – We don't have to decide it to hold it in advance. All we've got to do is enter an order, take it under advisement. But, again, in – You thought about that and didn't do it. But then in – Maybe Mr. Smolkin didn't think about it. Maybe he's thinking about it right now. All right, well – He won't take it alone because the petition is not going to let him work down in Virginia. Well, unless the court has further questions for me, I don't know that I've answered that satisfactorily. You've been very lenient this morning on these. I would – I'm a good panel from that standpoint. Just ask for you to deny his application. You don't have anything – You don't want to touch this advanced stuff? No, I really don't. All right. Thank you. Thank you. Mr. Smolkin. Thank you, Your Honor. Several points to make briefly. First, with regard to the actual innocence test, the Supreme Court has actually not foreclosed an interpretation of the statute that we're suggesting today because in the Calderon case, they cited only pre-AEDPA case law with regard to the actual innocence requirement. So when you look at the statute fresh and you look at the words of the statute, we believe that a claim like this, which has never been presented, satisfies the statutory test. I'd also like to address the plea agreement, the document, as Judge King referred to it. It does say a cap of 10 years. And a cap of active incarceration for 10 years cannot mean more than 10 years because there's a potential that the defendant would serve more than 10 years. For example, if credit for good time is not applied. She says there's an 80 percent rule in Virginia. Did you know that? I wasn't aware of that specific rule, Your Honor, but I can – I wasn't aware of it either, but if we assume that, it calculates right out to 13. Well, I'm not sure that it can with the words of the – I used to have one in the federal court when I was a prosecutor. That was a – it was a third. If you got a sentence of 18 years, you presumptively served six. So active incarceration was six if you kept your nose clean and then you got to go home. Well, Your Honor, that's exactly the point, if you kept your nose clean. So I don't think that under the language of this document that a defendant could agree to – We don't know because nobody – we don't know who wrote it or anything about it. That's exactly the point that we're hoping to make. It doesn't say sentence. Everybody came up here and said it was sentence of 10 years. Ten-year sentence. Sentence of 10 years. And it doesn't say a thing about sentence in that regard. The word's not in there. I agree the word sentence is not in there. That's right. And I think with regard to the probation violation that was raised,  this plea agreement is the total agreement between the parties. So there's at least a plausible inference that can be drawn that the probation violation was either wrapped up into this agreement – It's all speculation. We really don't know except we know he said – the judge mentioned 13 and he said 13. And he said he didn't want 13. That's right. He turned it down. Correct. He turned it down at the plea hearing. Now, what do you say about this abeyance question? Are you going to get around to that? Well, Your Honor, I think that if the court's decision is to wait to see how the state proceeding plays out, then we would happily agree that the court hold the case in abeyance. But I think that – What the state proceeding is, again, is a pro se filing for what? That's right. It was a pro se habeas petition under state – On that very same issue. On this issue. That's right. It's the same thing. It's going to the state court and seeking the very relief he's seeking here. Is it going to survive the statute of limitations? No, it will not. And that's precisely why he – You're not going anywhere. It's going to be about, what, a few minutes down there, and that's the end of this. That's right. But that's exactly the point with regard to exhaustion, which is there are no state remedies to exhaust. The statute of limitations under – Well, you probably would have never filed it there, would you? I'm sorry? I mean, would you have filed that for him if you'd been representing him in state court? If I would have represented him in state court, I believe I would have advised him to file a pre-filing authorization motion in this court. Would you have filed that for him under the circumstances of this case in this case? No, because I think it's not necessary for him to – Yeah, it's not going anywhere. I'm sorry, Your Honor? It's not going anywhere. The statute of limitations is so strict that I agree it's – likely it's not going anywhere. And that's why – that's why even a ruling in favor of Mr. McFadden's motion here will result in the federal district court being presented with this claim. And the federal district judge can decide whether there was a fact-finding. What if we rule against you? If you rule against us, Your Honor, this is the end of the road. And that's – This is the end of the road. That's right. And what if then after that the state court for some reason says, well, we think he can get around the statute of limitations. We'll give him a hearing. Then where are you? Well, Your Honor, I think that this court doesn't necessarily need to wait for that circumstance. I think that the federal district judge could then hold the federal – the second or successive 2254 claim in abeyance to the extent that judge deemed it necessary. Your client tried to get his records many times before, correct? That's right. And he thought he had them and he didn't give them all. And finally, so if the Commonwealth has a statute of limitation, assume they do, he couldn't have complied with it, correct? That's exactly right, Your Honor. So, therefore, doesn't the state have to show it has an adequate, appropriate remedy? Like that's where Martinez comes from. Remember he required you to bring ineffective assistance in your direct appeals and that kind of thing. And so, therefore, the federal courts said, Martinez, you'll get a chance for having separate counsel. Wouldn't that issue still be a question here whether or not it is an adequate remedy when there's no way you can do anything since the state didn't give him what he needed? That's exactly right, Your Honor. He has no remedy, in our view, in state court. Because of the statute of limitations that is so strict. Don't they have a discovery rule in state courts in Virginia? Well, the state Virginia, the Supreme Court of Virginia case law says there are no exceptions to the two-year statute of limitations. And that's the end of it. That's a 2004 case. I see that my time is up. If I may finish answering this question. Go ahead and answer. If somebody else asks you a question, you answer that, too. Yes, Your Honor. There simply are no remedies left in state court. I fully expect the Supreme Court will not find in favor of Mr. McFadden on his pro se appeal. But in the event this court would like to hold off until that decision is reached, we certainly don't have an objection. Well, we're looking for advice from the lawyers. And neither one of you wanted to hold an abeyance. I guess that's the end of the story. Well, I just don't think the state proceeding will have any ultimate bearing. No, but you don't know. You're not even his lawyer over there. You're not even entitled to go over and argue for him. I guess. That's true. Right now, I don't represent him in the state proceeding. That's right, Your Honor. But you're giving it up right here at the federal courts. You're coming here to concede it. I'm coming to concede. You're conceding his case in the state Supreme Court. Well, that's just my view of the statute of limitations. I'm not conceding much from your opinion. You know this is not going to, this is a statute of limitations. It's pretty solid. It's not going anywhere. That's right. I don't view it as a concession with regard to the underlying merits of his ineffective assistance of counsel claim. I just think that the procedural rule is such that he really doesn't have much of a hope in the state system. And that's exactly why we're here. And, Judge King, I'd like to just briefly close by sort of highlighting the comment you just made, which is that this is the end of the road if this motion is denied. And that's because he needs prefiling authorization from this court before he can bring a second habeas petition. Had he known about this, and through no fault of his own, that the government doesn't dispute that he wasn't at fault for not discovering this, he could have raised it in his first petition, certainly. But he only learned about it after his first petition was denied. He now stands here with a showing, a prima facie showing under the statute that can't be reviewed if this court denies it because the Supreme Court can't accept this case as a statutory matter, and this court can't rehear this case en banc as a statutory matter. So all we're really asking for here is that given the evidence that Mr. McFadden has presented, we respectfully ask this court to allow him to go to federal district court to present the merits of the dispute. Thank you, Your Honors. Thank you. How long has it been, like 10 years? He was convicted in December of 2006. Okay. Thank you. We'll come down and take counsel and adjourn for the day. Dishonorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Roger L. Gregory, James A. Wynn Jr.